IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jennifer Shamaly,                              Case No. 1:09 CV 680

             Petitioner,                    MEMORANDUM OPINION
                                               AND ORDER

     -vs-

Sheri Duffey,                                  JUDGE JACK ZOUHARY

             Respondent.


### INTRODUCTION

Petitioner Jennifer Shamaly ("Shamaly"), a prisoner in state custody at the Ohio Reformatory for Women, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1).  Respondent filed an Answer/Return of Writ (Doc. No. 6) and Petitioner filed a Traverse to the Answer/Return of Writ (Doc. No. 16).  Petitioner alleges her detention violates her rights guaranteed by the Due Process and Ex Post Facto Clauses of the U.S. Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. § 2254(a).

This case was referred to Magistrate Judge Armstrong for a Report and Recommendation ("R&R") pursuant to Local Rule 72.2.  The Magistrate recommended the Court deny the Petition (Doc. No. 17).

Petitioner filed an Objection (Doc. No. 21) to the Magistrate's R&R.  Pursuant to *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings and denies the Petition on alternative grounds.

## BACKGROUND

The R&R accurately recites the relevant procedural background, which is not objected to by Petitioner, and this Court adopts that record summary it in its entirety (Doc. No. 17, pp. 2-4). Briefly, Petitioner pled guilty to involuntary manslaughter with a firearm specification and aggravated robbery with a firearm specification stemming from her involvement in a robbery-homicide on July 26, 2004 (Doc. No. 6-1, Ex. 3). Shortly before the sentencing, defense counsel received statements made by her co-defendants, Houssam Albakour ("Albakour") and Rane Ayesh ("Ayesh"), that Petitioner supplied the murder weapon. Petitioner denied this allegation. The trial court used the testimony of Albakour and Ayesh as a factor in sentencing Petitioner (Doc. No. 6-2, at 167, 174).[1] The trial court sentenced Petitioner to two consecutive seven-year terms for involuntary manslaughter and aggravated robbery along with a one-year firearm specification for a total of fifteen years in prison.

Petitioner later filed a Motion for Reconsideration, arguing that Ayesh's testimony was false (Doc. No. 6-1, Ex. 4, at 13). As proof, Petitioner produced a tape recorded statement of Ayesh implying that Ayesh's testimony to the trial court was untruthful. The trial court denied Petitioner's Motion for Reconsideration and request for an evidentiary hearing (Doc. No. 6-1, Ex. 5, at 23).

Petitioner appealed directly to the Ohio court of appeals which affirmed, in part, Petitioner's sentence. The court of appeals vacated that portion of Petitioner's sentence that required her to spend one day per year in solitary confinement (Doc. No. 6, Ex. 12). Petitioner's appeal to the Ohio Supreme Court was dismissed as not involving any substantial constitutional question (Doc. No. 6, Ex. 17).

---

[1] The sentence took place on March 9, 2006 and included "the minimum fine" unless Petitioner proved she was indigent. On June 7, 2006, the trial court issued a *nunc pro tunc* order that no fine be imposed (Doc. No. 6-1, Ex. 6, at 24), the only change to the original order.

2

## STANDARD OF REVIEW

When a federal habeas claim has been adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect.  *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(e)(1), findings of fact made by the state court are presumed correct, and rebuttable only by clear and convincing evidence to the contrary.  *McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).  Furthermore, Rule 8(b)(4), Section 2254 states: "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate."

## ANALYSIS

The Petition sets forth two grounds for review (Doc. No. 1, at 4-6):

Ground One: Denial of due process by virtue of failure to consider evidence that [the] trial court relied upon materially false information.

Ground Two: Trial court violated due process by not sentencing defendant to minimum and concurrent terms of imprisonment, because such sentence was only sentence available under Ohio law without resort to judicial findings and trial court was not allowed to apply Ohio Supreme Court decision that abrogated need for such findings to a case where the offense conduct preceded the Ohio Supreme Court decision.

The Magistrate concluded that the Petition lacks merit on Ground One because the trial court's reliance on Petitioner's delivery of the murder weapon was not substantial and materially false information used in sentencing; and on Ground Two because the fifteen-year prison sentence given to Petitioner does not violate her ex post facto or due process rights.

Petitioner raises three objections in response to the Magistrate's recommendation on Ground One: (1) the R&R mistakenly concludes that the trial court did not rely on Petitioner's alleged delivery of the murder weapon as a material and substantial fact in sentencing; (2) the R&R fails to recognize that Ayesh's recorded post-sentencing statements establish the falsity of information on which the trial court relied in sentencing; and (3) the R&R failed to acknowledge that the recorded tape was authenticated by affidavit (Doc. No. 21, at 1-2).

With respect to the Magistrate's recommendation on Ground Two, Petitioner raises four objections: (1) the R&R fails to recognize that Petitioner's due process rights were violated by the severance remedy established in *State v. Foster*, 109 Ohio St. 3d 1 (2006), which removed the presumption of minimum and concurrent terms of imprisonment; (2) the R&R mistakenly concludes that the Ohio sentencing statute remained unaltered by *Foster*; (3) the R&R fails to address the fact that Petitioner's punishment has been affected by virtue of the *Foster* holding; and (4) the R&R fails to recognize that *Foster* enhanced Petitioner's punishment and altered the sentencing procedure, thus depriving Petitioner of her due process rights (Doc. No. 21, at 2-3).

4

This Court will address the three objections in Ground One together and then the four objections in Ground Two together because the objections in each Ground are interrelated.

**Ground One**

Petitioner first argues that her due process rights were denied because the trial court relied on materially false information in sentencing.  More specifically, Petitioner contends that the sentencing transcript demonstrates that the trial judge relied on testimony of co-defendants Ayesh and Albakour, even though a later authenticated tape recording of co-defendant Ayesh, surreptitiously made by Petitioner's partner, showed Ayesh lied when he testified that Petitioner supplied the murder weapon.

In *Williams v. New York*, 337 U.S. 241, 251 (1949), the U.S. Supreme Court set forth the principle that "the due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure." At the sentencing stage, due process does not mandate either the right of confrontation or the usual rules of evidence.  *Id.*; *see also Collins v. Buchkoe,* 493 F.2d 343, 345 (6th Cir. 1974).  In passing sentence, the trial judge should be provided with as much accurate information as reasonably possible under the circumstances.  *Collins,* 493 F.2d at 345.  Thus, the trial judge may appropriately consider responsible information of a relevant nature. *Id.*

However, the reliability and truthfulness of the information considered in sentencing remains a fundamental concern.  *Collins,* 493 F.2d at 345.  The sentencing judge has broad discretion with respect to the nature and source of information used in sentencing.  *Id.*  Nevertheless, there are limitations imposed by due process.  These limitations include the requirement that a defendant be sentenced on the basis of accurate information.  *U.S. v. Tucker,* 404 U.S. 443, 447 (1972).  The U.S.

5

Supreme Court has said that a defendant is deprived of due process where a sentencing judge relies on "extensively and materially false" information or "misinformation of a constitutional magnitude" which the "defendant had no opportunity to correct by services which counsel would provide." *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Tucker*, 404 U.S. at 443, 447.  A sentence may be vacated if the sentence is based on false or unreliable information.  *Collins*, 493 F.2d at 346. Petitioner must therefore show that (1) the facts in dispute were false, and (2) the trial court materially relied on these facts in passing sentence.  *See, e.g. King v. United States*, 2007 U.S. Dist. LEXIS 48303, at *9 (S.D. Ohio 2007).

The *Townsend* court also noted that a mere error in resolving a question of fact on a plea of guilty does not necessarily constitute a due process violation.  *Townsend*, 334 U.S. at 741. "Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree.  But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law." *Id.*

Upon review of the record, this Court finds Petitioner cannot meet the standard set forth in *Townsend* and its progeny.  In passing sentence, the trial court did rely, at least in part, on information that Petitioner supplied the murder weapon.  At the sentencing hearing, the trial judge stated that "She [Petitioner] was the key person.  She's the person who called Jason [the victim] on the phone to come over and buy the drugs.  She's the person that provided the gun for Fahed Kutkut. . . . I believe this is an appropriate sentence under all the factors that I have considered, and similar for like offenders, and I don't believe you deserve any other mitigation, even though you did cooperate with the State of Ohio, as you did set it up, you did bring the gun, and that is an appropriate sentence." (Doc. No. 6-2, at 167, 174).

6

However, Petitioner fails to show that the fact she provided the gun was extensively false information of a constitutional magnitude. *See Townsend*, 334 U.S. at 741. Ayesh's allegedly false testimony was not the only evidence the trial judge relied on to determine that Petitioner provided the murder weapon. Petitioner acknowledges that in addition to Ayesh, a second co-defendant, Albakour, also testified that Petitioner provided the gun (Doc. No. 16, at 2; Doc. No. 6-2, at 167-68). At sentencing the trial judge relied on other credible facts to determine that Petitioner supplied the murder weapon, including the fact that she set up the drug deal, had knowledge of the robbery, had discussions with other co-defendants with regard to the gun, saw that the gun was not loaded with bullets, and allowed the bullets to be put into the gun prior to the gun being used (Doc. No. 6-2, at 167-69). Additionally, the trial judge's sentence relied on the fact that Petitioner had a prior criminal record and history of drug abuse (Doc. No. 6-2, at 168-69).

Furthermore, the trial court reviewed and denied Petitioner's Motion for Reconsideration, in which she presented the alleged tape recording of Ayesh suggesting he lied to the court in claiming Petitioner supplied the murder weapon (Doc. No. 6-1, Ex. 5). Although the trial court's entry order is short, it explicitly states that Petitioner's motion was "considered by this court" but "not well taken" (Doc. No. 6-1, Ex. 5).

This Court thus finds that the trial judge did not rely exclusively on whether Petitioner supplied the gun in sentencing Petitioner. Although the facts upon which the trial judge relied are disputed by Petitioner, any error that may have occurred in sentencing was harmless. In the Sixth Circuit, harmless error review requires the court to assess whether a constitutional error "had substantial and injurious effect or influence" on the outcome of the case. *Franklin v. Bradshaw*, 545 F.3d 409, 415 (6th Cir. 2008) (citing *Fry v. Pliler,* 551 U.S. 112 (2007)). In light of the testimony of

7

Albakour and the other facts recited at sentencing, this Court finds that any error which may have occurred did not have a substantial and injurious effect on Petitioner's sentence.

### Ground Two

In Ground Two, Petitioner claims that, as applied to her case, *Foster* violates the Ex Post Facto and Due Process Clauses of the U.S. Constitution because *Foster* removed the presumption of minimum and concurrent terms of imprisonment, thereby altering her punishment to her disadvantage.

The Ex Post Facto Clause prohibits a state from passing a law that (1) criminalizes an action done before the law was passed, (2) aggravates a crime, or makes the crime greater than it was when committed, (3) changes the punishment to inflict greater punishment than the law provided when the crime was committed, or (4) alters the legal rules of evidence so that less or different testimony is required than at the time the offense was committed. *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (citing *Calder v. Bull,* 3 U.S. 386, 390 (1798)) (quotations omitted). The Ex Post Facto Clause applies "as a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Id.* (quoting *Marks v. United States,* 430 U.S. 188, 191 (1977)). Nevertheless, the "limitations on ex post facto judicial decision-making are inherent in the notion of due process." *Id.* Consequently, the principles of the Ex Post Facto Clause apply to the courts through the Due Process Clause. *See id.* at 458-59. Because these principles are viewed through the lens of due process in the judicial context, the constitutionality of judicial action turns on the traditional due process principles of "notice, foreseeability, and, in particular, the right to fair warning," rather than the specific prescriptions of the Ex Post Facto Clause. *Id.*; *see also Hooks v. Sheets*, 603 F.3d 316, 320-21 (6th Cir. 2010).

To fall within the ex post facto prohibition, two critical elements must be present: (1) the law "must be retrospective, that is, it must apply to events occurring before its enactment"; and (2) "it must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. 423, 430 (1987) (citing *Weaver v. Graham,* 450 U.S. 24, 29 (1981)). However, no ex post facto violation occurs if a change does not alter "substantial personal rights," but merely changes "modes of procedure which do not affect matters of substance." *Dobbert v. Florida*, 432 U.S. 282, 293 (1977).

In *Foster*, the Ohio Supreme Court struck down certain provisions of Ohio's sentencing guidelines that permitted sentencing enhancements based on judicial fact-finding. 109 Ohio St. 3d 1 (2006). The court severed three unconstitutional enhancements -- Revised Code Sections 2929.14(B), 2929.14(C) and 2929.14(E)(4) -- related to consecutive, non-minimum, and maximum sentences in Ohio's sentencing guidelines. *Id.* at 29. Furthermore, following a similar severance remedy adopted by the U.S. Supreme Court in *United States v. Booker*, 543 U.S. 220 (2005), the *Foster* court held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at 30.

Petitioner asserts that because her offenses were committed prior to *Foster*, her non-minimum and consecutive sentences imposed after *Foster*, and based on *Foster*'s elimination of the trial court's fact-finding requirements, constitute the retroactive application of an unforeseeable judicial enlargement of criminal sentencing statutes. Petitioner contends that she faced a maximum sentence of only three years prior to *Foster* for her conviction on the two first-degree felonies (presumptive minimum sentence of three years per count running concurrently, O.R.C. §§ 2929.13, 2929.14(B)-(C) and 2929.14(E)(4)), but the trial court's imposition of the non-minimum and consecutive sentence of

9

fifteen years (seven years per first-degree felony count along with the one-year merged firearm specification) altered her substantial rights and violated her due process rights.  This Court disagrees.

In *Oregon v. Ice*, 129 S. Ct. 711, 714-15 (2009), the Supreme Court held that the Sixth Amendment does not exclude a state's practice of requiring a judge to find certain facts before sentencing a defendant to consecutive, rather than concurrent, terms of imprisonment.  *Id.*  Pursuant to the holding in *Ice*, Petitioner's claim that her sentence of consecutive terms based on judicial determinations of fact violates her due process rights, is without merit.  *Id.; see also Evans v. Hudson*, 575 F.3d 560, 566 (6th Cir. 2009).

Furthermore, Petitioner's criminal conduct was prohibited by Ohio statutes before *Foster,* and those same statutes provided her notice of the potential range of sentences she could receive.  *Rhoads v. Welch*, 2009 WL 3600330, at *4 (N.D. Ohio 2009); *see also U.S. v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *State v. Elswick*, 2006 WL 3833868, at *24 (Ohio Ct. App. 2006).  *Foster* did not enlarge the potential sentence, but instead held that in the context of mandatory state law sentencing guidelines, state court judges are prohibited from enhancing criminal sentences based on facts other than those decided by the jury or admitted by the defendant.  *See Arias v. Hudson*, 589 F.3d 315 (6th Cir. 2009).  The statutory range of permissible sentences for the crimes Petitioner committed remained unchanged before and after *Foster*.  *Rhoads*, 2009 WL 3600330, at *4.

Petitioner had notice and fair warning she could be sentenced anywhere between three and ten years per count on a first-degree felony when she committed the crimes at issue.  Thus, Petitioner's potential sentence was foreseeable.  "The Sixth Amendment jury trial right simply ensures that the defendant will never get *more* punishment than he bargained for when he did the crime; it does not promise that he will receive anything less than that."  *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th

10

Cir. 2009) (internal quotations omitted); *see also State v. Elmore*, 122 Ohio St. 3d 472, 477 (2009) (holding that the "ex post facto challenge fails because there has been no increase in potential punishment"). "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto." *Dobbert*, 432 U.S. at 293-294.

Petitioner has failed to demonstrate that the retroactive application of *Foster's* elimination of the trial court's fact-finding requirement violates the Ex Post Facto Clause or Due Process Clause of the U.S. Constitution. Petitioner did not receive a sentence greater than that allowed under the laws of Ohio at the time she committed her crimes, and *Foster* therefore did not alter her substantial rights.

## CONCLUSION

After conducting a *de novo* review, Petitioner's objections are not well taken. Accordingly, the Petition for Writ of Habeas Corpus is dismissed with prejudice. Further, under 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal of this action could not be taken in good faith and no certificate of appealability shall issue.

IT IS SO ORDERED.

_____*s/ Jack Zouhary*_____
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 23, 2010

11